### STATE v. DOCK CRANFIELD (CRANFILL).

(Filed 12 June, 1953.)

**1. Forgeries § 2—Where blank checks bearing forged signature are filled out at defendant's direction, they are indirectly uttered by defendant.**

Evidence tending to show that defendant delivered to a merchant signed blank checks and requested the merchant to fill them in for specified amounts and received therefor merchandise and cash, and that the signatures were forgeries, *is held* sufficient to be submitted to the jury in a prosecution under G.S. 14-120, since even though the checks were incapable of passing or obtaining anything of value as delivered, the checks were filled in at the direction of defendant, and therefore the evidence is sufficient on the question whether defendant directly or indirectly uttered the forged checks.

**2. Criminal Law § 42b—**

The trial court has the discretionary power to permit leading questions, and upon defendant's failure to show prejudice such discretionary action of the trial court will not be disturbed.

**3. Criminal Law § 78d—**

The denial of a motion to strike out the testimony of a main witness for the State will not be held for error, since it would seem that the motion is too late and, in failing to point out any particular portion of the testimony, is too vague and general.

APPEAL by defendant from *Armstrong, J.,* at 9 March, 1953, Term, of FORSYTH.

Criminal prosecutions upon two bills of indictment, Nos. 8453 and 8454, each containing two counts charging (1) forgery of a check, and (2) uttering of a forged check. No. 8453 relates to a check signed in the name of Claude Hicks, dated 18 February, 1952, drawn upon the Bank of Davie, payable to the order of Cash for the sum of $62.90. And No. 8454 relates to a check signed in the name of Frank Hendrix, dated 25 April, 1952, drawn upon the Bank of Davie, payable to the order of Piedmont Bargain House for the sum of $50.00.

Defendant pleaded not guilty.

Upon trial in Superior Court the State offered testimony substantially as follows:

(1) Claude Hicks testified that he knew nothing about the check, dated 18 February, 1952, drawn on the Bank of Davie, Mocksville, N. C., for $62.90, payable to order of Cash, purporting to be signed in his name, until it showed up in his bank statement that was returned in March, 1952; that he did not sign the check, nor did he authorize anybody to sign his name to it; and that the writing in the body of the check is different from that of the signature.

(2) J. Frank Hendrix testified that he knew nothing about the check dated 25 April, 1952, drawn on the Bank of Davie, Mocksville, N. C., for $50, payable to the order of Piedmont Bargain House, purporting to be signed in his name, until around the first of May when it came to him through his bank statement; that he did not sign the check, nor did he authorize anybody to sign his name to it; and that the handwriting in the body of the check is not the same as the signature.

(3) And Nathan Sosnik testified substantially and in pertinent part that in the year 1952 he was operating the Piedmont Bargain House, at 606½ N. Trade Street, right across the street from the Western Auto, in Winston-Salem, North Carolina; that on 18 February defendant came into his store with a check just signed at the bottom in the name of "Claude Hicks" stating that he, the landlord on whose land he farmed, told him to buy lespedeza seed, and that he (defendant) wanted to do some trading in his (Sosnik's) store; that it would take $50 to buy the lespedeza seed, besides the $12.90 for merchandise; that defendant told him to fill in the check, and he did so,—everything except the signature; and that after the check was filled in, he, Sosnik, cashed it for defendant,— taking out $12.90 for merchandise and gave him, defendant, $50 in "cash money."

And Nathan Sosnik continued, saying: That on 25 April the defendant came back to his store and said that he needed $50; that defendant had a check on which there was nothing but Mr. Hendrix' signature; and requested him, Sosnik, to fill in the check, and that he, Sosnik, did so in defendant's presence, and then cashed it for him and gave him $50 "cash money."

Defendant, as witness for himself, denied the transactions related by the witness Sosnik,—testifying that he was in the town of Mocksville on both of those days.

The above is the framework on which the case was presented to the jury.

Verdict: Guilty of uttering as charged in the second count of the bill of indictment in each of the above cases.

Judgment: A prison sentence in No. 8453, followed by a like sentence in No. 8454, to run consecutively—the latter suspended on conditions stated.

Defendant appeals therefrom to Supreme Court, and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Gerald F. White, Member of Staff, for the State.*

*Frank Freeman and J. J. Harris for defendant, appellant.*

WINBORNE, J.  Appellant, the defendant, brings forward several assignments of error,—but, after careful consideration of them, prejudicial

error is not made to appear. However, this Court will treat such of the assignments of error so presented as it is deemed to be required.

Assignments of error numbered 7 and 9 are based upon exceptions numbered 7 and 15, to denial of motions aptly made for judgment as of nonsuit, pursuant to G.S. 15-173.

In this connection it is appropriate to note that the two counts in the bills of indictment on which these prosecutions are founded are in conformity with the provisions of two kindred statutes pertaining to forgery, (1) G.S. 14-119, relating to "Forgery of bank-notes, checks and other securities," and (2) G.S. 14-120, relating to "Uttering forged paper." These statutes have as their origin an act of the General Assembly of North Carolina, "begun and held at Raleigh" on 20 November, 1819, Chapter 994 (2 Potter 1819) entitled "An Act more effectually to punish the making, passing or attempting to pass, counterfeit bank-notes."

And this Court, considering this Act of 1819, in the case of *S. v. Harris,* 27 N.C. 287, at December Term, 1844, in opinion by *Ruffin, C. J.,* had this to say: "Under the first section of the act of 1819 the crime consists in passing as true 'a note which the party knew to be forged.' But by the second section the passing or attempting to pass by one person 'to any other person' a forged note, knowing it to be forged, constitutes the offense. It is putting spurious paper in circulation, and not defrauding the individual who takes it, that the statute has in view."

Defendant stands convicted of the charge predicated upon the provision of G.S. 14-120 relating to "uttering forged paper." This statute declares that: "If any person, directly or indirectly, whether for the sake of gain, or with intent to defraud or injure any other person, shall utter or publish any such false, forged or counterfeited bill, note, order, check or security as is mentioned in the preceding section; or shall pass or deliver, or attempt to pass or deliver, any of them to another person (knowing the same to be falsely forged or counterfeited), the person so offending shall be punished by imprisonment . . ."

The preceding section, G.S. 14-119, so referred to, relating to "Forgery of bank-notes, checks and other securities" declares that "If any person shall falsely make, forge or counterfeit, or cause or procure the same to be done, or willingly aid or assist therein, any bill or note in imitation of, or purporting to be, a bill or note of any incorporated bank in this State, or in any of the United States, or in any of the territories of the United States; or any order or check on any such bank or corporation, or on the cashier thereof; or any of the securities purporting to be issued by or on behalf of the State, or by or in behalf of any corporation, with intent to injure or defraud any person, bank or corporation, or the State, the person so offending shall be guilty of a felony and shall be punished by imprisonment . . .," etc.

Defendant takes the position that "one of the essential elements of a forged check is that it be capable of passing or obtaining a thing of value," and that, hence, when the checks in question physically passed from the hands of defendant into the hands of Nathan Sosnik, neither of them was capable of "passing or obtaining a thing of value." In support of this position the case of *Barnes v. Crawford,* 115 N.C. 76, 20 S.E. 386, is cited. In that case the Court stated that "to constitute an indictable forgery, it is not alone sufficient that there be a writing, and that the writing be false, it must also be such as, if true, would be of some legal efficacy, real or apparent, since otherwise it has no legal tendency to defraud." There is nothing wrong with this principle, but the difficulty confronting defendant, as reflected by the record, is that the premises he assumes is only an inference the jury might find from the evidence offered on the trial.

The motion for judgment as of nonsuit raises the question as to whether the evidence offered upon the trial, and shown in the case on appeal, taken in the light most favorable to the State, is sufficient to take the case to the jury on the question as to whether defendant passed to Nathan Sosnik a forged check, knowing it to be forged. The evidence tends to show that the name appearing on, and as the drawer of the checks, respectively, was not signed by such person, nor did he authorize any other person to sign it for him. The evidence tends to show that the purported drawer of each check knew nothing of it until it came to him through the bank on which it was drawn. Manifestly this evidence is of sufficient import to support a finding by the jury that the name appearing as the drawer of the check was forged. The evidence further tends to show that defendant had these blank checks so purporting to be signed. And as to the check of 18 February, the evidence tends to show that defendant represented to Nathan Sosnik that his landlord "gave him the check to do his trading, to buy lespedeza seed, which took $50.00 besides the $12.90 worth of merchandise" for which defendant was trading, and that at defendant's request, and in his presence, he, Sosnik, filled in the check payable to Cash for $62.90, and that after the check was filled in, he, Sosnik, cashed it for defendant, taking out $12.90 for the merchandise, and gave defendant $50.00 in cash.

From this evidence, we fail to follow through on defendant's contention that the filling in of the check was the handiwork of Sosnik, for which he, the defendant, is not responsible. The statute G.S. 14-120 expressly covers any person who "directly or indirectly" utters a forged check. What defendant did through Sosnik, he did himself.

Assignments of error numbered 1, 2, 3, 4 and 5, based upon exceptions of like numbers, relate to leading questions asked by the Solicitor for the State of the witness Sosnik on direct examination with respect to his

filling in the blank spaces in the checks, and as to his doing so at the request and direction of defendant. In this connection, it has been uniformly held by this Court that "the allowance of leading questions is a matter entirely within the discretion of the trial judge, and his ruling will not be reviewed on appeal, at least in the absence of a showing of abuse of discretion." Stansbury's N. C. Evidence, Section 31, citing *S. v. Buck,* 191 N.C. 528, 132 S.E. 151. See also among other cases *S. v. Hargrove,* 216 N.C. 570, 5 S.E. 2d 852; *S. v. Harris,* 222 N.C. 157, 22 S.E. 2d 229.

Applying this principle to case in hand, prejudice is not discernible,— hence there is no showing of abuse of discretion. *S. v. Harris, supra.*

Assignment of Error 6, based on exception 6, is directed to ruling of the court in denial of defendant's motion "that the evidence of the witness Nathan Sosnik be stricken out." The motion was made at the conclusion of the testimony of the witness. It would seem that the motion came too late. Indeed, it is vague and too general, and fails to point out any particular portion of the testimony of the witness. And for these, if for no other reasons, the exception is without merit.

As to other assignments of error, express consideration is not deemed necessary.

In the judgment from which appeal is taken, we find

No error.