STATE OF NORTH CAROLINA v. KIM ALLAN MANUEL

No. 9

(Filed 31 January 1977)

1. Criminal Law § 87— allowance of leading questions

The trial court has discretionary authority to permit leading questions in proper instances, and upon defendant's failure to show prejudice such discretionary action by the trial court will not be disturbed.

2. Criminal Law § 87— allowance of purported leading questions

The trial court did not err in the admission of purportedly leading questions where most of the questions challenged were not leading or else the answers elicited had been received without objection at other points in the testimony.

3. Homicide § 21— first degree murder — sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution for first degree murder where it tended to show that defendant concealed himself in the bathroom of deceased's home for the purpose of robbing deceased, and that defendant shot and killed deceased with a .22 caliber rifle shortly after deceased entered his home.

4. Constitutional Law § 36; Homicide § 31— substitution of life imprisonment for death penalty

Sentence of life imprisonment is substituted for the death penalty imposed on defendant for first degree murder.

DEFENDANT appeals from judgment of *Ervin, J.,* 3 November 1975 Session, CATAWBA Superior Court.

Defendant was tried on a bill of indictment, proper in form, charging him with the first degree murder of Fred Thomas Copas on 28 December 1974 in Catawba County.

The State's evidence tends to show that defendant and his brother-in-law William Gene Anderson lived in the same house. In September and December 1974 they had several discussions about robbing Fred Thomas Copas. Defendant talked about using some gas from a hospital—"throw it in on them and go in and get the money from the house." On the night of the murder Anderson loaned his .22 rifle to defendant and then accompanied defendant in defendant's car to the home of the victim. They cut the screen on a back window of the victim's house, entered the Copas residence and concealed themselves in the bathroom to await the arrival of Mr. Copas. William Gene Anderson, having pled guilty to second degree murder in a plea-bargaining arrangement, testified that after about 15 minutes he went outside the house and about 30 minutes later heard shots fired; that he ran to the car and defendant arrived shortly thereafter and stated that he had shot the victim in the stomach. Defendant and Anderson then drove some distance from the crime scene where Anderson hid the rifle.

The testimony of Mrs. Fred Copas tends to show that on the night of 27 December 1974 she was at home alone; that she went to bed about 10 p.m. after seeing that all of the doors were locked and the windows closed; that her husband came in the front door about 1 a.m., turned on some lights and went toward the bathroom; that she then heard a shot followed by two more shots, and heard her husband screaming; that she saw him lying in the hall and ran to a neighbor's house for help.

The body of Fred Thomas Copas was found lying in the bedroom doorway with his feet in the hall. He had suffered two .22 caliber gunshot wounds, one of which had lacerated both lungs and the aorta causing massive bleeding resulting in death. A .38 pistol was lying near his body. Two .22 caliber shell casings were found in the bathroom and another was found on the back porch. These shell casings were conclusively

determined by ballistics experts to have been fired from the .22 rifle belonging to William Gene Anderson. The testimony of a Sears Roebuck sales clerk tended to show that during October 1974 defendant had purchased .22 caliber shells similar to those found at the Copas home.

Defendant offered no evidence.

From a verdict of guilty as charged and judgment imposing the death penalty, defendant appealed to the Supreme Court.

*Rufus L. Edmisten, Attorney General; Claude W. Harris, Assistant Attorney General, for the State of North Carolina.*

*J. Steven Brackett, attorney for defendant appellant.*

HUSKINS, Justice.

In his brief and upon oral argument, defendant abandoned all assignments of error except assignments Nos. 3 and 6. Those will be discussed in the order listed.

By his third assignment defendant contends the court erred in permitting the prosecution to elicit evidence by the use of leading questions.

[1, 2] A leading question is one that suggests the desired answer. Frequently, questions that may be answered by "yes" or "no" are regarded as leading. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 31, and cases there cited. Nevertheless, the trial court has discretionary authority to permit leading questions in proper instances, *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6 (1965), and upon defendant's failure to show prejudice such discretionary action by the trial court will not be disturbed. *State v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353 (1953). ". . . [T]his Court has wisely and almost invariably held that the presiding judge has wide discretion in permitting or restricting leading questions. When the testimony so elicited is competent and there is no abuse of discretion, defendant's exception thereto will not be sustained." *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975); *State v. Edwards,* 286 N.C. 140, 209 S.E. 2d 789 (1974). Here, no abuse of judicial discretion is shown. Most of the questions challenged

were not leading or else the answers elicited had been received without objection at other points in the testimony. In no event has the defendant been prejudiced. This assignment is overruled.

[3] Failure to nonsuit at the close of the State's evidence constitutes defendant's sixth assignment of error. Such motion requires the trial judge to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608 (1971). "Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled." *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). The Court is not concerned with the weight of the testimony when considering such motion but only with its sufficiency to carry the case to the jury and sustain the indictment. *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969). When tested by these principles there is abundant evidence to carry the case to the jury. The motion for compulsory nonsuit was therefore properly denied.

Defendant's motion to set aside the verdict and for a new trial is merely formal and requires no discussion. Such motion is addressed to the discretion of the court, and refusal to grant it is not reviewable. *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960).

Defendant's motion in arrest of judgment is deemed abandoned under Rule 28, Rules of Appellate Procedure, 287 N.C. 671 at 741, since no reason or argument in support of it is set out in defendant's brief.

[4] The Court notes *ex mero motu* that in *Woodson v. North Carolina,* ____ U.S. ____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (decided 2 July 1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was indicted, convicted and sentenced to death. Therefore, by authority of the provisions of the 1973 Session Laws, chapter 1201, section 7 (1974 Session), a sentence of life imprisonment is substituted in lieu of the death penalty in this case.

Our examination of the entire record discloses no error affecting the validity of the verdict returned by the jury. The trial and verdict must therefore be upheld. To the end that a sentence of life imprisonment may be substituted in lieu of the death sentence heretofore imposed, the case is remanded to the Superior Court of Catawba County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish to defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated.