STATE OF NORTH CAROLINA v. PHILLIP LEE YOUNG

No. 307A83

(Filed 30 January 1985)

1. **Homicide § 12; Indictment and Warrant § 13.1— aggravating circumstances used in seeking death penalty—no requirement of disclosure in indictment or bill of particulars**

In a prosecution for first degree murder, first degree burglary, and robbery with a dangerous weapon, the State was not required to allege the aggravating factors on which it would rely in seeking the death penalty in either the indictment or in a bill of particulars. The indictment used adequately apprised defendant of the charge and the information necessary for the preparation of his defense, G.S. 15A-2000(e) sets forth the only aggravating factors on which the State may rely in seeking the death penalty, and aggravating factors do not constitute "factual information" which must be listed in a bill of particulars under G.S. 15A-925(b).

State v. Young

**2. Indictment and Warrant § 13.1— denial of motion for bill of particulars—no error**

The trial court did not err by denying defendant's motion for a bill of particulars stating the time and date of the deceased's death and the exact type of weapon used where defense counsel indicated in the hearing on the motion that he had access to autopsy reports revealing the time and date of death and that he had seen the knife which the State contended was the murder weapon.

**3. Criminal Law § 98.2— denial of motion to sequester witnesses—no error**

The trial court did not abuse its discretion by denying defendant's motion to sequester the State's chief witnesses so that they could not influence each other's testimony where defendant conceded that the testimony eventually presented included many discrepancies. G.S. 15A-1225.

**4. Criminal Law § 99— denial of motion that officers dress in street clothes—no abuse of discretion**

The trial court did not abuse its discretion by denying defendant's motion that officers wear street clothes while testifying.

**5. Criminal Law § 87.1— admission of leading questions—no error**

The trial court did not abuse its discretion by allowing the prosecutor to lead witnesses during direct examination where several of the questions complained of were not leading and others elicited testimony already received into evidence without objection or testimony not subject to reasonable dispute.

**6. Criminal Law §§ 51, 52— expert witness properly qualified and allowed to answer hypothetical questions**

There was no error in permitting a witness to respond to hypothetical questions as an expert in serology where there was ample evidence to support the trial judge's qualification of the witness as an expert.

**7. Criminal Law § 43.4— photographs of knife with holes in victim's clothing—not prejudicial**

There was no error in the admission of photographs showing the alleged murder weapon being fitted into holes in coveralls which belonged to the victim where the photographs illustrated the testimony of an S.B.I. agent about whether the weapon would have caused tears in the victim's coveralls.

**8. Homicide § 21.5; Burglary and Unlawful Breakings § 5.11; Robbery § 4.3— evidence of each offense sufficient**

The court properly denied defendant's motions to dismiss the charges of first degree murder, first degree burglary, and robbery with a dangerous weapon and to set aside the verdict as contrary to the weight of the evidence where the evidence showed that defendant suggested to two companions that they rob and kill the victim to obtain money; defendant and his companions gained entry to the victim's house by trick with the intention of committing armed robbery and murder; defendant pulled a knife from his pants and stabbed the victim twice in the chest and a companion stabbed the victim several times in the back; and defendant went through the victim's pockets, removed his wallet, and divided the money with his companions.

9. **Criminal Law § 102.9— first degree murder—argument for death penalty as retribution—no error**

In a prosecution for first degree murder, the State did not err in arguing for the death penalty on the basis of retribution. Defendant did not object at trial and any impropriety was not so gross that the court abused its discretion by failing to correct the prosecutor *ex mero motu.*

10. **Criminal Law § 135.9— first degree murder—argument that jury should not consider youth a mitigating factor—no error**

In a prosecution for first degree murder, the prosecutor did not improperly attempt to turn a statutory mitigating circumstance into an aggravating circumstance, but rather argued that in *this case* the jury should not find the defendant's age (19) as a mitigating circumstance.

11. **Criminal Law § 135.7— court's instruction of jury—correction of misstatement —no error**

In a prosecution for first degree murder, the trial court did not commit reversible error in the sentencing phase where it mistakenly instructed the jury that Issue Three was whether the mitigating circumstances were *sufficient*, rather than *insufficient*, to outweigh the aggravating circumstances. The jury was recalled and correctly instructed when the court reporter informed the court of the error, the jury took with it into the jury room an issues form with the correct wording, and the error was in defendant's favor.

12. **Criminal Law § 135.4— death penalty—sentencing phase—instructions that sentence would be life imprisonment if jury not unanimous—not required**

The court was not required to instruct the jury that it would impose a sentence of life imprisonment if the jury could not agree on a recommendation of punishment, and the North Carolina capital punishment scheme is not unconstitutional in that it permits subjective discretion and discrimination in imposing the death penalty.

13. **Criminal Law § 135.4; Constitutional Law § 63— death penalty—aggravating circumstance that crime was especially heinous, atrocious and cruel—not unconstitutionally vague—death qualifying jury not unconstitutional**

The issue of whether the aggravating circumstance that a murder was especially "heinous, atrocious, or cruel" was unconstitutionally vague and overbroad was not properly before the Court because defendant did not attack G.S. 15A-2000(e)(9) prior to or during trial and did not object to jury instructions relating to that factor, and the jury did not find that this aggravating circumstance existed. Moreover, both G.S. 15A-2000(e)(9) and the practice of death qualifying the jury have been held constitutional. North Carolina Rules of Appellate Procedure Rule 10(b)(2).

14. **Criminal Law § 135.10— death sentence disproportionate**

Although the evidence supported the aggravating factors found by the jury and there was nothing in the record suggesting that the sentence of death was influenced by passion, the death sentence was vacated as disproportionate to the penalty imposed in the pool of similar cases. G.S. 15A-2000(d)(2).

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by defendant from the judgment of *Davis, J.,* at the 2 May 1983 Special Session of Criminal Superior Court, WATAUGA County.

On 8 February 1983 defendant, Dwight Jackson and David Presnell met at the Big G Game Room, a recreation center and pool hall in Boone, North Carolina. At approximately 6:30 p.m. that day Jackson and Presnell hitchhiked from Boone to Blowing Rock to buy liquor. They hitchhiked back to the Big G Game Room, arriving at around 7:30 p.m. Presnell and Jackson stayed in the parking lot of the game room drinking the liquor they had purchased. At some point in the evening defendant, who had been shooting pool inside, left the pool hall and joined Presnell and Jackson in the parking lot.

A witness testified that the victim, J. O. Cooke, who regularly visited the Big G Game Room, was there that evening. The witness testified that Cooke left the game room between 9:30 and 10:00 p.m. as was his custom.

After finishing a bottle of vodka in the parking lot, defendant, Presnell, and Jackson began to talk about how they might obtain more liquor. Jackson suggested that they go to J. O. Cooke's house to get another pint. Since the men had no money, defendant suggested that the three men go to Cooke's house, rob and kill him, and take money. Presnell and Jackson testified that they thought defendant was joking since robbing Cooke was a common joke at the Big G Game Room. The three men left the Big G Game Room parking lot and began walking to Cooke's house. On the way defendant suggested that Jackson hold Cooke, defendant stab him, and Presnell "finish" him. When the men arrived at Cooke's house, Jackson knocked on the door and told Cooke that they wanted to buy liquor. Cooke let the men inside and went into the kitchen to get the liquor. When he returned with the vodka, defendant suddenly reached into his pants, pulled out a knife and stabbed Cooke twice in the chest. Cooke said "What are you doing?" and fell to the floor. Cooke was able to take the knife from his own chest, at which point defendant told Presnell to "finish him." Presnell stabbed the victim five or six times in the back.

Defendant searched through Cooke's pockets and wallet and divided the money he found among the three men. The men then searched the house for other valuables and found a coin collection which they divided. They left the house, and Jackson placed the knife in a nearby snowbank.

On the following day Elvin Hundley and his father, who owned the Big G Game Room, became suspicious when Cooke did not make an appearance at the game room. Elvin Hundley testified that he and a man named J. C. Trivette went to Cooke's house to look for him at around 4:00 or 4:30 p.m. When Hundley and Trivette arrived, they noticed Cooke's car in his garage. They knocked on the door at Cooke's house, but they heard no response. Upon looking into a window, they saw Cooke's body on the floor and immediately notified the police.

Dr. Evan H. Ashby, a medical examiner for Watauga County, testified that in his opinion Cooke had died before midnight on 8 February. Cooke received two stab wounds in the chest and six in the back, according to Dr. Ashby's testimony.

Dr. Modesto Sharyj, a pathologist at Bowman-Gray School of Medicine in Winston-Salem, testified that he had conducted an autopsy on the body of Cooke. He testified that in his opinion Cooke died shortly after being stabbed. In his opinion the cause of death was loss of blood resulting from a stab wound to the heart.

On 14 February 1983 Dwight Jackson led Officer Robert Kennedy of the Boone Police Department to the snowbank where the murder weapon had been placed. John Bendure, a forensic chemist with the North Carolina State Bureau of Investigation, testified that fibers found on the blade of the knife were consistent with fibers from the deceased's clothes. David Spittle, an S.B.I. serologist, testified that tests he had performed on the knife showed the presence of blood.

Scott Worsham, an S.B.I. specialist in hair identification and comparison, testified that a hair found on the deceased's clothing was consistent with a hair removed from the head of defendant.

On 8 February 1983 defendant was charged with first-degree murder, first-degree burglary, and robbery with a dangerous weapon. At trial defendant offered no evidence. The jury found

defendant guilty of first-degree murder, first-degree burglary, and robbery with a dangerous weapon.

In the sentencing phase of the trial, conducted pursuant to N.C.G.S. § 15A-2000(a)(1), the trial court submitted three aggravating circumstances: (1) whether the murder was committed while defendant was engaged in a commission of robbery with a dangerous weapon or first-degree burglary; (2) whether the murder was committed for pecuniary gain; and (3) whether the murder was especially heinous, atrocious, or cruel. The trial court submitted two mitigating circumstances for consideration by the jury: (1) the age (19) of defendant; and (2) any other circumstance deemed to have mitigating value. The jury found as aggravating circumstances that the murder was committed while in the commission of a robbery or burglary and that it was committed for pecuniary gain. The jury found evidence of one or more mitigating circumstances, but found them insufficient to outweigh the aggravating circumstances. The jury recommended that defendant be sentenced to death and the trial court entered judgment accordingly. Defendant appealed as a matter of right pursuant to N.C.G.S. § 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Robert H. West for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error, defendant contends the trial court erred in failing to require the State to reveal upon which aggravating circumstances it intended to rely in seeking the death penalty. In particular, defendant challenges the sufficiency of the indictment to charge defendant with first-degree murder for which a penalty of death is sought by the prosecution. He also contends the trial court erred in denying defendant's pretrial motion for a bill of particulars to disclose the aggravating circumstances the State intended to prove in the sentencing phase of the trial. Defendant contends that his constitutional rights under the sixth, eighth and fourteenth amendments to the Constitution of the United States were violated by these alleged errors. We reject these contentions.

Defendant concedes that his bill of indictment was sufficient under our law to charge the offense of first-degree murder. He nonetheless contends that a charge of first-degree murder in which aggravating circumstances exist and the death penalty is sought is a more serious offense. He argues that the indictment must set forth the aggravating circumstances the State intends to prove to protect his right to be informed of the charges he must be prepared to meet.

We rejected defendant's argument in *State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981), *cert. denied*, 456 U.S. 932 (1982). We held in *Williams* that the State need not set forth in an indictment the aggravating circumstances upon which it will rely in seeking a sentence of death. Defendant in this case was adequately apprised in his indictment of the charge of first-degree murder and provided with information necessary for the preparation of his defense. Furthermore, N.C.G.S. § 15A-2000(e) sets forth the only aggravating circumstances upon which the State may rely in seeking the death penalty. We held in *Williams* that the statutory notice provided by N.C.G.S. § 15A-2000(e) is sufficient to satisfy constitutional requirements of due process.

We have also rejected defendant's argument that the trial court erred in failing to require the State, upon defendant's motion for a bill of particulars, to allege upon which aggravating circumstances it intended to rely. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080 (1982); *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), *cert. denied*, 463 U.S. 1213 (1983).

The statute governing bills of particulars is N.C.G.S. § 15A-925 which provides in pertinent part:

(a) Upon motion of a defendant under G.S. 15A-952, the court in which a charge is pending may order the State to file a bill of particulars with the court and to serve a copy upon the defendant.

(b) A motion for a bill of particulars must request and specify items of factual information desired by the defendant which pertain to the charge and which are not recited in the pleading, and must allege that the defendant cannot adequately prepare or conduct his defense without such information.

(c) If any or all of the items of information requested are necessary to enable the defendant adequately to prepare or conduct his defense, the court must order the State to file and serve a bill of particulars. Nothing contained in this section authorizes an order for a bill of particulars which requires the State to recite matters of evidence.

We indicated in *Brown* that aggravating circumstances do not constitute "factual information" within the meaning of N.C.G.S. § 15A-925(b). The trial court did not err in failing to require the State to list in a bill of particulars aggravating circumstances it intended to prove.

[2] Defendant in his next two assignments of error contends that the trial court erred in denying his motion for a bill of particulars stating the time and date of deceased's death and the exact type of weapon used in the crime. These assignments of error are without merit.

The function of a bill of particulars is to inform defendant of specific occurrences intended to be investigated at trial and to limit the course of the evidence to a particular scope of inquiry. *State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981); *State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979). The granting or denial of motions for a bill of particulars is within the discretion of the trial court and is not subject to review except for palpable and gross abuse thereof. *State v. Detter*, 298 N.C. at 611, 260 S.E. 2d at 574.

In *Detter*, as in this case, defendant requested in a motion for a bill of particulars that the State provide information about, among other things, the identity of the murder weapon and date of death of the deceased. The trial court denied her motion on grounds that she had received the information she requested in discovery and already possessed the information she needed adequately to prepare and conduct her defense.

Our review of the record in this case similarly reveals that the counsel for defendant had before trial received the information sought in the bill of particulars. The counsel for defendant indicated in the hearing on the motion that he had access to autopsy reports revealing the time and date of defendant's death. He stated that he had actually seen the knife which the State con-

tended was the murder weapon. Since the defendant was apprised through his attorney of the "specific occurrences" intended to be investigated at trial, we hold that the trial court acted well within its discretion in denying defendant's motion for a bill of particulars. Defendant's assignments of error are overruled.

[3] Defendant next contends the trial court erred in denying his motion to sequester the chief witnesses in the State's case, the codefendants Presnell and Jackson. Defendant argues that since these witnesses provided crucial evidence linking him to the crimes charged, the trial court should have granted his motion to sequester them so that they would not influence each other's testimony. The guidelines governing the exclusion of witnesses are found in N.C.G.S. § 15A-1225 which provides:

> Upon motion of a party the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify, except when a minor child is called as a witness the parent or guardian may be present while the child is testifying even though his parent or guardian is to be called subsequently.

A motion to sequester witnesses is addressed to the sound discretion of the trial judge and is not reviewable on appeal absent a showing of an abuse of discretion. *State v. Royal*, 300 N.C. 515, 268 S.E. 2d 517 (1980); *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982).

Defendant has made no showing of abuse of discretion on the part of the trial judge. In his argument defendant concedes that there were many discrepancies in the two witnesses' testimony. In fact the variance in the testimony of the witnesses has led defendant in a separate assignment of error to argue the trial court should have dismissed the murder charge because of insufficiency of the evidence. Defendant has not shown how the trial court's failure to sequester the witnesses resulted in the witnesses conforming their testimony to the prejudice of defendant. We overrule this assignment of error.

[4] By his next assignment of error defendant contends that the trial court erred in denying defendant's pretrial motion that the officers wear street clothes while testifying. In the hearing on the motion, defendant argued that the presence of officers in uni-

form unnecessarily prejudiced the jury against him. The trial judge denied the motion, stating, "Well, I'm not asking anybody to put on a uniform, but I'm not going to ask anyone to take theirs off, either, that is DENIED."

Defendant has cited no authority in support of his argument and has not preserved in the record any indication as to how the law enforcement officers who testified were dressed. In the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the courts are within the trial judge's discretion. *State v. Rhodes*, 290 N.C. 16, 224 S.E. 2d 631 (1976). The presiding judge is given large discretionary power as to the control of the trial. *Id.*

Defendant has shown neither an abuse of discretion on the part of the trial court nor any prejudice attributable to the court's denial of his motion. This assignment of error is without merit.

**[5]** Defendant next contends that the trial court erred in allowing the prosecutor to lead witnesses Presnell, Jackson and Kennedy during direct examination. We find no merit in these assignments of error. A leading question is usually defined as one which suggests the desired response, and may frequently be answered yes or no. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977). Because a question may be answered yes or no, however, does not necessarily make it leading. *Id.* Rulings by the trial court on leading questions are discretionary and reversible only for abuse of discretion. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, *cert. denied*, 429 U.S. 932 (1976). Guidelines have evolved over the years to the effect that counsel should be allowed to lead witnesses on direct examination in certain circumstances. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). We have held that where leading questions elicit testimony already received without objection into evidence, where the import of the testimony is not subject to reasonable dispute, or where the questions are asked for the purpose of securing preliminary or introductory testimony, the trial court does not abuse its discretion in permitting the questions. *See* 1 *Brandis on North Carolina Evidence* § 31 (1982); *State v. Manuel*, 291 N.C. 705, 231 S.E. 2d 588 (1977).

We have examined the record and find no abuse of discretion. Several of the questions complained of are not leading. Others elicit testimony already received into evidence without objection or testimony not subject to reasonable dispute. We overrule this assignment of error.

[6] Defendant contends that the trial court erred in receiving David Spittle as an expert in serology and in permitting him to answer hypothetical questions. Defendant argues that Spittle had limited experience and education and that his testimony served only to mislead the jury. We disagree. An expert witness is one who is better qualified than the jury to draw appropriate inferences from the facts. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973). The determination whether a witness is qualified as an expert is a question of fact and is ordinarily within the exclusive province of the trial judge. *State v. Fulton*, 299 N.C. 491, 263 S.E. 2d 608 (1980). To qualify as an expert, an individual need not be a specialist or be engaged in a particular profession or calling. It is enough that through study, experience, or both, he is better qualified than the jury to form an opinion on a particular subject. 1 *Brandis on North Carolina Evidence* § 133 (1982).

Where a judge finds a witness qualified as an expert, that finding will not be reversed unless there was no competent evidence to support the finding or unless the judge abused his discretion. *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214 (1975), *death sentence vacated*, 428 U.S. 903 (1976). We find ample evidence in the record to support the trial judge's qualification of Spittle as an expert.

Although defendant objects to the trial court's permitting Spittle to respond to hypothetical questions, it is well settled that an expert witness may express an opinion based on facts within his own knowledge or based on facts not within his knowledge but incorporated into hypothetical questions. *State v. David*, 222 N.C. 242, 22 S.E. 2d 633 (1942). The witness Spittle was properly allowed to testify as an expert in response to questions concerning blood which remained on the knife found in a snowbank. We reject this assignment of error.

[7] By his next assignment of error, defendant contends that the trial court erred in admitting into evidence certain photographs *showing the alleged murder weapon being fitted into holes in the*

material of coveralls which belonged to the victim. Defendant asserts that the photographs were offered merely to inflame the jury.

This Court has long held that photographs competent to illustrate the testimony of the witnesses are not rendered inadmissible because they tend to arouse prejudice. *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975), *death sentence vacated*, 428 U.S. 903 (1976).

The photographs to which defendant objects clearly illustrated the testimony of S.B.I. Agent Scott Worsham on the issue whether the murder weapon could have caused tears in the victim's coveralls. The photographs were properly admitted into evidence and we overrule this assignment of error.

[8] Defendant contends the trial court erred in failing to dismiss at the close of the State's evidence the charges of first-degree murder, first-degree burglary and robbery with a dangerous weapon.

On a motion to dismiss on the ground of insufficiency of the evidence, the question for the court is whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982); *State v. Riddle*, 300 N.C. 744, 268 S.E. 2d 80 (1980). In evaluating the motion, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978).

We first address defendant's argument that the first-degree murder charge should have been dismissed because "twelve reasonable men listening to this evidence could not possibly find the defendant guilty."

First-degree murder is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645 (1983). The evidence in this case, considered in the light most favorable to the State, tended to show that defendant suggested to two companions that they rob and kill the victim, John Oscar Cooke, for the purpose of obtaining money with which to purchase liquor. Defendant and his friends walked over to the victim's house and gained entry to the

dwelling by a ruse. Defendant pulled a knife from his pants and stabbed Cooke twice in the chest and David Presnell then stabbed the victim several times in the back. Cooke died as a result of the injuries inflicted by defendant and Presnell. Clearly, this brief summation of the evidence suffices to show that defendant's motion to dismiss the first-degree murder charge for insufficiency of the evidence was properly denied.

Defendant also contends the evidence presented by the State at trial was insufficient to prove the essential elements of the crime of first-degree burglary.

To warrant a conviction for first-degree burglary, the State's evidence must show that there was a breaking and entering during the nighttime of an occupied dwelling with the intent to commit a felony therein. *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976). A breaking may be actual or constructive. *State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976). A constructive breaking, as distinguished from actual forcible breaking, occurs when entrance to the dwelling is accomplished through fraud, deception or threatened violence. *Id.* at 539-40, 223 S.E. 2d at 316.

In the instant case, the State presented evidence that defendant and two others went to the victim's home on the night of 8 February 1983 intending to commit the felonies of armed robbery and murder. The victim was tricked into opening the door by Dwight Jackson's false statement that he and his friends had come to purchase liquor from the victim. This evidence supports the trial judge's refusal to dismiss the charge of first-degree burglary for insufficiency of the evidence.

Finally, we consider defendant's objection to the trial court's refusal to dismiss the charge of robbery with a dangerous weapon at the close of the State's evidence.

The elements constituting the offense of armed robbery are "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Beaty*, 306 N.C. 491, 496, 293 S.E. 2d 760, 764 (1982).

To dispose of defendant's argument on this point it suffices to say that the evidence, taken in the light most favorable to the

State, revealed that Defendant Young and David Presnell each stabbed John Cooke with a knife. Defendant then went through Cooke's pockets, removed his wallet and divided the money among the three of them. This evidence is sufficient to withstand defendant's motion to dismiss the charge of armed robbery.

In conclusion, we hold that the State presented substantial evidence as to the essential elements of each of the crimes charged and as to the defendant's commission of each offense. These assignments of error are overruled.

Likewise, we hold that the trial judge did not err in denying defendant's motion to set aside the verdict as being contrary to the weight of the evidence. A motion to set aside the verdict is addressed to the discretion of the trial judge and is not reviewable on appeal in the absence of abuse of that discretion. *State v. Hill,* 294 N.C. 320, 240 S.E. 2d 794 (1978). Here, no abuse of discretion has been shown.

SENTENCING PHASE

We consider defendant's contentions relating to the prosecutor's jury argument during the penalty phase of the trial.

[9] Defendant's first argument under this assignment of error is that the district attorney was improperly permitted to argue for the death penalty on the basis of retribution. The portion of the prosecutor's argument to which defendant takes exception is as follows:

I have never known any man, and I know this is true of Phillip Young as well, there is no man who has ever lived who does not have someone who loves him. And the first inclination on the part of anyone who was told of the death of one of their close loved ones is to say, I will take care of this myself. I have seen that as a prosecutor. And I can tell you that unless we tell them now don't do anything foolish, let the law take care of this, but I can tell you when the law consistently does not take care of it, there will come a time when good citizens themselves will go out and do that which the law has failed to do.

*I'm talking about retribution.* And I know right now within this community there are any number of people who

are just cringing to think that a prosecutor would stand up and argue retribution because we are not supposed to think like that. But the reality of it is, Ladies and Gentlemen, unless the law deals very terribly and very punitively to those people who have committed very terrible and very punitive crimes, there will be a time when the citizens will act without the law.

Defendant did not object to this argument at trial. Therefore we apply the standard of review set forth by this Court in *State v. Johnson*, 298 N.C. 355, 369, 259 S.E. 2d 752, 761 (1979).

In capital cases . . . an appellate court may review the prosecution's argument, even though defendant raised no objection at trial, but the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.

Assuming *arguendo* that the prosecutor's remarks were improper, the impropriety was not so gross that the trial judge abused his discretion in failing to correct the district attorney *ex mero motu.*

[10] By this same assignment of error, defendant contends that in his jury argument the prosecutor attempted to "turn a statutory mitigating factor, defendant's young age (19), into an aggravating factor."

We have carefully reviewed the prosecutor's remarks relating to defendant's age and find no impropriety. The district attorney did not, as defendant contends, attempt to turn a statutorily designated mitigating circumstance into an aggravating circumstance. Rather, the prosecutor argued that *in this case* the jury should not find that defendant's chronological age was a mitigating circumstance. His remark that the defendant's age should not be found to mitigate his punishment is not tantamount to a suggestion that the jury consider this circumstance as an *aggravating* one. This assignment is overruled.

[11] Defendant's next argument is that the trial court committed reversible error in its instructions to the jury during the sentencing phase of the trial.

The sole basis for this argument is that on one occasion the trial judge mistakenly used the word "sufficient" instead of "insufficient" when instructing on the third issue the jury must consider when determining the defendant's punishment in a capital case. Issue Three on the Issues and Recommendation as to Punishment Form reads as follows:

> Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances is, or are, *insufficient* to outweigh the aggravating circumstance or circumstances you have found?

(Emphasis added.)

Despite defendant's failure to object to this misstatement at trial, we have considered his argument and find that this single instructional mistake does not constitute prejudicial error.

The record reveals that just as the jury left the courtroom to begin deliberations on the issues relating to defendant's punishment, the court reporter informed the trial judge of his error in substituting the word "sufficient" for "insufficient" in his explanation of Issue Three. The judge immediately recalled the jury and informed them that he had previously misread one of the words in the penalty phase instructions. He then correctly instructed the jury on Issue Three. Clearly, under these circumstances the one inadvertent misuse of the word "sufficient" is not prejudicial error entitling defendant to a new sentencing hearing. This is especially true since the jury carried with them into the jury room a copy of the Issues and Recommendation as to Punishment Form on which the third issue was correctly printed.

Furthermore, we note that it would seem any error in the trial judge's misuse of the word "sufficient" in his explanation of Issue Three would have been favorable to defendant. This is so because if the jury found that the mitigating circumstances were *sufficient* to outweigh the aggravating circumstances, a sentence of life imprisonment would have been mandated.

This assignment of error is without merit and is overruled.

[12] Defendant next contends the trial judge erred in failing to instruct the jury that the court would impose a sentence of life imprisonment if the jury could not unanimously agree on a recommendation of punishment.

We have repeatedly held that such an instruction is improper "because it would be of no assistance to the jury and would invite the jury to escape its responsibility to recommend the sentence to be imposed by the expedient of failing to reach a unanimous verdict." *State v. Williams*, 308 N.C. 47, 73, 301 S.E. 2d 335, 351-52, *cert. denied*, --- U.S. ---, 104 S.Ct. 202 (1983). *See also State v. Smith*, 305 N.C. 691, 292 S.E. 2d 264, *cert. denied*, 459 U.S. 1056 (1982); *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788 (1981). The trial judge therefore did not err in failing to give this instruction.

Defendant argues that the North Carolina capital punishment scheme embodied in N.C.G.S. § 15A-2000 is unconstitutional in that it permits subjective discretion and discrimination in imposing the death penalty. We summarily overrule this assignment of error on the basis of our numerous prior decisions rejecting this argument. *See, e.g., State v. Maynard*, 311 N.C. 1, 316 S.E. 2d 197 (1984); *State v. Oliver and Moore*, 309 N.C. 326, 307 S.E. 2d 304 (1983).

[13] Defendant's next contention is that N.C.G.S. § 15A-2000 (e)(9), which allows the sentencing jury to find as an aggravating circumstance that the murder was "especially heinous, atrocious, or cruel," is unconstitutionally vague and overbroad both on its face and in the manner in which it has been interpreted by this Court.

We note initially that this issue is not properly before us. Defendant made no motion prior to trial nor during the course of the trial proceedings attacking the constitutionality of this aggravating circumstance. Neither did defense counsel object to the jury instructions relating to this factor. *See* North Carolina Rule of Appellate Procedure 10(b)(2). Finally, this issue is not fairly presented in this case because the jury did not in fact find this aggravating circumstance to exist.

Even assuming this issue were properly before the Court, however, it is clearly without merit. We have repeatedly held that N.C.G.S. § 15A-2000(e)(9) is constitutional on its face. *See State v. Boyd*, 311 N.C. 408, 319 S.E. 2d 189 (1984); *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981). Similarly, in the recent case of *State v. Maynard*, 311 N.C. 1, 34, 316 S.E. 2d 197, 215 (1984), this Court reviewed our interpretation of N.C.G.S. § 15A-2000(e)(9) in prior cases and concluded that it is entirely consist-

ent with the mandate of *Furman v. Georgia*, 408 U.S. 238 (1972) and *Godfrey v. Georgia*, 446 U.S. 420 (1980). This assignment of error is overruled.

Defendant also contends that the process used in "death qualifying" a jury prior to the guilt phase of the trial results in a "guilt prone" jury and violates his constitutional right to be tried by a jury comprised of a representative cross-section of the community. This Court, as well as the Fourth Circuit Court of Appeals, has consistently decided this issue adversely to defendant. *See Keeten v. Garrison*, 742 F. 2d 129 (4th Cir. 1984); *State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983). We decline to reconsider our prior decisions on this issue and therefore hold that the current jury selection process in this State in first-degree murder cases is constitutional.

## PROPORTIONALITY

[14]    As a final matter in every capital case, we are directed by N.C.G.S. § 15A-2000(d)(2) to review the record and determine (1) whether the record supports the jury's findings of any aggravating circumstance or circumstances upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

After an exhaustive review of the transcript, record on appeal, briefs and oral arguments, we find that the evidence supports the two aggravating factors found by the jury. These were that the murder was committed while defendant was engaged in the commission of armed robbery (N.C.G.S. § 15A-2000(e)(5) ) and that it was committed for pecuniary gain (N.C.G.S. § 15A-2000 (e)(6) ). We also conclude that there is nothing in the record which suggests that the sentence of death was influenced by passion, prejudice or any other arbitrary factor. We thus turn to our final statutory duty of proportionality review.

In determining whether the death sentence in this case is disproportionate to the penalty imposed in similar cases, we first refer to the now familiar "pool" of cases established in *State v.*

---

---

*Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied,* --- U.S. ---, 104 S.Ct. 202 (1983).

> In comparing "similar cases" for purposes of proportionality review, we use as a pool for comparison purposes *all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*Id.* at 79, 301 S.E. 2d at 355 (emphasis in original). The pool "includes only those cases which have been affirmed by this Court." *State v. Jackson*, 309 N.C. 26, 45, 305 S.E. 2d 703, 717 (1983).

We have held that our task on proportionality review is to compare the case "with other cases in the pool which are roughly similar with regard to the crime and the defendant. . . ." *State v. Lawson*, 310 N.C. 632, 314 S.E. 2d 493 (1984).

> If, after making such a comparison, we find that juries have consistently been returning death sentences in the similar cases, then we will have a strong basis for concluding that a death sentence in the case under review is not excessive or disproportionate. On the other hand if we find that juries have consistently been returning life sentences in the similar cases, we will have a strong basis for concluding that a death sentence in the case under review is excessive or disproportionate.

*Id.* at 648, 314 S.E. 2d at 503.

In conducting our proportionality review in this case, we have reviewed the approximately twenty-eight robbery murder cases in the "pool." We note that in twenty-three of these cases, juries imposed sentences of life imprisonment rather than death.[1]

---

1. *State v. McDonald*, 312 N.C. 264, 321 S.E. 2d 849 (1984); *State v. Wilson*, 311 N.C. 117, 316 S.E. 2d 46 (1984); *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984); *State v. Martin*, 309 N.C. 465, 308 S.E. 2d 277 (1983); *State v. Abdullah*, 309 N.C. 63, 306 S.E. 2d 100 (1983); *State v. Whisenant*, 308 N.C. 791, 303 S.E. 2d 784 (1983); *State v. Hill*, 308 N.C. 382, 302 S.E. 2d 202 (1983); *State v. Ladd*, 308 N.C. 272, 302 S.E. 2d 164 (1983); *State v. Barnett*, 307 N.C. 608, 300 S.E. 2d 340

The death penalty was imposed in five cases.[2] While we wish to make it *abundantly clear* that we do not consider this numerical disparity dispositive of our proportionality review, our careful examination of these cases has led us to the conclusion that although the crime here committed was a tragic killing, "it does not rise to the level of those murders in which we have approved the death sentence upon proportionality review." *State v. Jackson,* 309 N.C. at 46, 305 S.E. 2d at 717. The facts presented by this appeal more closely resemble those cases in which the jury recommended life imprisonment than those in which the defendant was sentenced to death.

In this case, the evidence essentially reveals that defendant, a young man nineteen years of age, and two companions went to the victim's home on the night of 8 February 1983 intending to rob and murder him. They gained entry to Cooke's dwelling by trick. Defendant stabbed Cooke twice in the chest and his companion Presnell "finished him" by stabbing him several more times. Young and his two friends then stole the victim's money and some valuable coins and fled the scene. The pathologist testified that the victim died shortly after he was stabbed.

Although we have not in the past, and will not in the future "necessarily feel bound during [our] proportionality review to give a citation to every case in the pool of 'similar cases' used for comparison," *State v. Williams,* 308 N.C. 47, 81, 301 S.E. 2d 335, 356, *cert. denied,* --- U.S. ---, 104 S.Ct. 202 (1983), we find it instructive to discuss several cases which impelled our conclusion that the death penalty is disproportionate in this case.

(1983); *State v. Booker,* 306 N.C. 302, 293 S.E. 2d 78 (1982); *State v. Brock,* 305 N.C. 532, 290 S.E. 2d 566 (1982); *State v. Fox,* 305 N.C. 280, 287 S.E. 2d 887 (1982); *State v. Hunt,* 305 N.C. 238, 287 S.E. 2d 818 (1982); *State v. Adcox,* 303 N.C. 133, 277 S.E. 2d 398 (1981); *State v. Miller,* 302 N.C. 572, 276 S.E. 2d 417 (1981); *State v. Hawkins,* 302 N.C. 364, 275 S.E. 2d 172 (1981); *State v. Smith,* 301 N.C. 695, 272 S.E. 2d 852 (1981); *State v. Moore,* 301 N.C. 262, 271 S.E. 2d 242 (1980); *State v. Weimer,* 300 N.C. 642, 268 S.E. 2d 216 (1980); *State v. Easterling,* 300 N.C. 594, 268 S.E. 2d 800 (1980); *State v. Avery,* 299 N.C. 126, 261 S.E. 2d 803 (1980); *State v. Atkinson,* 298 N.C. 673, 259 S.E. 2d 858 (1979); *State v. Crews,* 296 N.C. 607, 252 S.E. 2d 745 (1979).

2. *State v. Gardner,* 311 N.C. 489, 319 S.E. 2d 591 (1984); *State v. Lawson,* 310 N.C. 632, 314 S.E. 2d 493 (1984); *State v. Oliver and Moore,* 309 N.C. 326, 307 S.E. 2d 304 (1983); *State v. Craig and Anthony,* 308 N.C. 446, 302 S.E. 2d 740, *cert. denied,* --- U.S. ---, 104 S.Ct. 263 (1983); *State v. Williams,* 305 N.C. 656, 292 S.E. 2d 243, *cert. denied,* 459 U.S. 1056 (1982).

A case with facts similar to the murder here under review is *State v. Whisenant*, 308 N.C. 791, 303 S.E. 2d 784 (1983). In *Whisenant*, the defendant, a forty-three-year-old male, discussed with several witnesses his intention to rob the Leonhardt home in Morganton, North Carolina. On 28 June 1981, he went to the Leonhardt residence and shot and killed the owner, a seventy-nine-year-old male, and the housekeeper, a sixty-six-year-old female. The jury found as aggravating circumstances that defendant had previously been convicted of a felony involving the use of violence against another person; the murder was committed while defendant was engaged in the commission of armed robbery; the murder was perpetrated for pecuniary gain; and the murder was committed while defendant was engaged in a course of conduct which included the commission of another crime of violence against another person. No mitigating circumstances were found. Despite the presence of four aggravating circumstances and the failure of the jury to find a single circumstance in mitigation of defendant's punishment, defendant was sentenced to consecutive life sentences after the jury was unable to agree upon the recommendation of punishment. *See* N.C.G.S. § 15A-2000(b) (1983).

*State v. Hunt*, 305 N.C. 238, 287 S.E. 2d 818 (1982) is another capital case in which the crime committed by the defendant was much worse than that committed by Phillip Young, yet the jury found the aggravating circumstances not sufficiently substantial to call for the imposition of the death penalty and a sentence of life imprisonment was imposed.

In *Hunt*, the deceased, Walter Ray, lived alone in a trailer in Henderson, North Carolina. Ray operated an illegal bar in his residence. As Ray was closing the bar one night, defendant put on gloves, walked up behind the victim, grabbed him and put a knife against his throat. Defendant then forced Ray back to the bedroom where defendant searched a closet and removed approximately $400.00 and a pistol from it. As defendant prepared to shoot Ray with the pistol, Ray begged him not to kill him that way. Defendant agreed to employ another method.

After forcing Ray to drink beer and a pint of liquor, defendant slashed one of Ray's forearms near the wrist with a knife. He slashed him again and waited while the victim slowly bled to death. Defendant then left the trailer carrying the pistol and the money with him.

The jury found six aggravating circumstances, but specified no mitigating circumstances since they found that the aggravating circumstances were insufficient to support the death penalty.

Finally,[3] we agree with defendant's contention that this case is very similar to *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983) in which this Court overturned a death sentence as disproportionate to the penalty imposed in similar cases.

In *Jackson*, three men conspired to ambush and rob a seventy-one-year-old ailing man. The trio faked car trouble and the elderly victim, George McAulay, stopped to offer aid. One of the three men told McAulay that they needed jumper cables. McAulay replied that he did not have any with him, but would give one of the men a ride to town. Defendant got into the car with him. When the victim refused to give Jackson money, Jackson murdered McAulay by shooting him twice in the head. Jackson took the money, met his companions and reported to them that he had killed McAulay because he had refused to relinquish the money.

The jury found as an aggravating circumstance that the crime was committed for pecuniary gain. They found as the sole mitigating circumstance that defendant had no significant history of prior criminal activity. In the instant case, the jury found the two aggravating circumstances earlier mentioned, that is, that the murder was committed while defendant was engaged in the commission of armed robbery and that it was committed for pecuniary gain. The jury did not specify the mitigating circumstances they found.

In contrast to *Whisenant, Hunt, Jackson* and other cases contained in footnote 1 are those armed robbery cases in which this Court affirmed the jury's recommendation of the death penalty as an appropriate punishment. We do not deem it necessary to discuss each of these cases; suffice it to say that we have carefully

---

3. By singling out these few cases for discussion, we do not mean to imply that these were the only cases reviewed by this Court in conducting our proportionality review. We considered carefully each of the cases in the "pool" as defined by *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, --- U.S. ---, 104 S.Ct. 202 (1983).

reviewed each of them and are convinced that defendant Young did not commit a crime as egregious as those committed by the defendants in *Gardner, Lawson, Oliver and Moore, Craig and Anthony* and *Williams*. In nearly all those cases, the jury found as an aggravating circumstance that the defendants were engaged in a course of conduct which included the commission of another crime of violence against another person. Furthermore, in *Oliver and Moore* and *Craig and Anthony*, the jury found that the murder was especially atrocious, heinous or cruel. In this case, however, the jury specifically found that this aggravating circumstance did *not* exist.

In conclusion, we hold as a matter of law that the death sentence imposed in this case is disproportionate within the meaning of N.C.G.S. § 15A-2000(d)(2). We are therefore required by the statute to sentence defendant to life imprisonment in lieu of the death sentence.

The sentence of death is vacated and defendant is hereby sentenced to imprisonment in the State's prison for the remainder of his natural life. Defendant is entitled to credit for days spent in confinement prior to the date of this judgment.

Guilt-Innocence Phase: No error.

Sentencing Phase: Death sentence vacated, sentence of life imprisonment imposed.

Justice VAUGHN did not participate in the consideration or decision of this case.