STATE OF NORTH CAROLINA v. TERRY LEE BALL

No. 68A94

(Filed 6 September 1996)

1. **Criminal Law § 395 (NCI4th); Jury § 79 (NCI4th)— capital trial—comment by court—seeking jurors without predisposition**

    The trial court did not err by informing the jury venire in a capital trial that the court was seeking jurors with no predisposition concerning the case. Assuming, *arguendo*, that the trial court's instruction was improper, it was not so prejudicial as to amount to plain error.

    **Am Jur 2d, Jury §§ 189 et seq.**

2. **Jury § 114 (NCI4th)— capital trial—motion for individual voir dire—denial without evidence or argument**

    The trial court did not err by denying defendant's motion for individual *voir dire* in a capital trial without affording defendant the opportunity to present evidence or argument in support of his

**STATE v. BALL**

[344 N.C. 290 (1996)]

motion since (1) defendant's motion included only an unsubstantiated allegation that individual *voir dire* was required in order to receive a fair trial and thus did not set forth any ground for the trial court to grant the motion, and (2) the mere refusal of the trial court to receive supportive oral argument does not demonstrate substantive reversible error in the denial of a discretionary motion.

**Am Jur 2d, Jury §§ 198, 199.**

**3. Jury § 227 (NCI4th)— capital trial—jury selection—death penalty views—rehabilitation—excusal for cause**

The trial court did not err in a capital trial by allowing the State's challenge for cause of a prospective juror who stated several times in initial questioning by the court that she could not, under any circumstances, vote to impose the death penalty, indicated during examination by defense counsel that she could set aside her beliefs and render a verdict that would require imposition of the death penalty, stated during examination by the State that she could not impose the death penalty unless it was mandated, and again told the court that there were no circumstances under which she could return a verdict requiring imposition of the death penalty. Notwithstanding her indication to defense counsel, the prospective juror was never able to state clearly, through her responses *in toto*, her willingness to temporarily set aside her own beliefs in deference to the rule of law, and the trial court did not abuse its discretion in determining that her views would prevent or substantially impair her from performing her duties as a juror.

**Am Jur 2d, Jury §§ 199, 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**4. Jury § 70 (NCI4th)— capital trial—jury selection—information sheet—absence of mitigation definition**

The trial court did not err by utilizing a jury selection information sheet in a capital trial which failed to define for prospective jurors the concept of mitigation. The jury selection information sheet and the trial court's accompanying remarks met the trial court's obligation under N.C.G.S. § 15A-1213 to briefly intro-

STATE v. BALL

[344 N.C. 290 (1996)]

duce the case to the prospective jurors by identifying the parties and their counsel and informing the jurors of the offense with which defendant was charged, the victim's name, the defendant's plea, and any affirmative defense relied on by the defendant.

**Am Jur 2d, Jury §§ 186 et seq.**

**5. Jury § 127 (NCI4th)— jury selection—exclusion of irrelevant and redundant questions**

The trial court did not err by refusing to permit defense counsel to ask a prospective juror who had indicated that he had utilized the services of a therapist whether he had found the treatment of the therapist helpful since the question was not relevant to the issue of the juror's ability to consider the testimony of a mental health expert. Nor did the trial court err by refusing to permit defense counsel to ask a prospective juror who had stated that she did not feel as qualified as a psychiatrist to form an opinion about drug abuse whether that applied to crack cocaine because the question was argumentative and redundant.

**Am Jur 2d, Jury § 205.**

**6. Jury § 123 (NCI4th)— jury selection—question tending to stake-out jurors**

The trial court did not err by refusing to permit defense counsel to ask prospective jurors in a capital trial how many of them thought that drug abuse was irrelevant to punishment in this case since the question was an improper attempt to "stake-out" the prospective jurors on how they would react to evidence of defendant's history of drug abuse.

**Am Jur 2d, Jury § 205.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

**7. Jury § 191 (NCI4th)— denial of challenges for cause—failure to preserve right to assign as error**

Defendant failed to preserve his right to assign error to the denial of challenges for cause where he did not seek to renew any of his previously denied challenges for cause after exhausting his peremptory challenges. N.C.G.S. § 15A-1214(h).

**Am Jur 2d, Jury §§ 334-336.**

**8. Evidence and Witnesses § 2479 (NCI4th)— refusal to sequester witnesses—reasoned decision—no abuse of discretion**

The trial court did not abuse its discretion in the denial of defendant's pretrial motion to sequester the witnesses in a capital trial where defendant made no showing that the trial court failed to make a reasoned decision.

**Am Jur 2d, Trial §§ 240 et seq.**

**9. Robbery § 84 (NCI4th)— attempted armed robbery—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of attempted armed robbery of the male victim as well as the female victim where it tended to show that defendant entered the victims' home with a concealed knife; defendant used the knife to attack the male victim in the kitchen of the home; while defendant was assaulting the male victim, the female victim entered the kitchen; defendant then chased her with the knife; and during the attack on the female victim, defendant was overheard to say, "Give me your money."

**Am Jur 2d, Robbery § 89.**

**10. Burglary and Unlawful Breakings §§ 70, 78 (NCI4th)— first-degree burglary—constructive breaking—intent to commit larceny—sufficiency of evidence**

There was sufficient evidence of a constructive breaking and an intent to commit larceny at the time of the breaking to support defendant's conviction of first-degree burglary where the evidence tended to show that defendant, armed with a concealed knife, rang the doorbell of a minister's home at 4:00 a.m.; when the minister went to the door, defendant stated that the minister had told him that he would be there if defendant ever needed to talk with someone; the minister acknowledged that he had made such a statement and let defendant into his home; within minutes of entering the home, defendant attacked the minister and then his wife with the knife; and defendant demanded money from the wife prior to stabbing her to death.

**Am Jur 2d, Burglary § 50.**

**Use of fraud or trick as "constructive breaking" for purpose of burglary or breaking and entering offense. 17 ALR5th 125.**

**11. Evidence and Witnesses § 3165 (NCI4th)— capital sentencing—defendant's self-serving statement—exclusion prior to defendant's testimony**

The trial court did not err by refusing to allow defendant's self-serving post-arrest statement to be read to the jury in a capital sentencing proceeding prior to defendant's own testimony since there is no right to corroboration in advance of a witness's testimony. In any event, defendant was not prejudiced by the exclusion of his statement where defendant thereafter testified and related the substance of the statement to the jury.

**Am Jur 2d, Witnesses §§ 641 et seq.**

**12. Criminal Law § 458 (NCI4th)— capital sentencing—questions by prosecutor—parole eligibility not raised**

The State did not improperly inject the issue of parole eligibility into a capital sentencing proceeding by questions on cross-examination of defendant's mental health expert pointing out that defendant had been incarcerated only a short time in California at the time a report was prepared stating that defendant's adjustment to prison had been good.

**Am Jur 2d, Trial § 1443.**

**13. Criminal Law § 452 (NCI4th)— capital sentencing—jury argument—aggravating circumstances—facts of prior felony—no impropriety**

The prosecutor's argument concerning the violent nature of defendant's prior felony conviction in California was properly made in reference to the aggravating circumstance that defendant had previously been convicted of a violent felony and did not improperly urge the jury to consider the facts of defendant's prior felony in order to find the especially heinous, atrocious, or cruel aggravating circumstance in this case.

**Am Jur 2d, Trial § 1760.**

**14. Criminal Law § 452 (NCI4th)— capital sentencing—mitigating circumstances—incorrect argument—prejudice cured by instructions**

Although the prosecutor's comment to the jury that, in order to find a mitigating circumstance, the jury must find that it exists and that it has mitigating value was incorrect as to statutory mit-

STATE v. BALL

[344 N.C. 290 (1996)]

igating circumstances, any prejudice was cured by the trial court's correct instructions to the jury.

**Am Jur 2d, Trial § 1760.**

15. **Criminal Law §§ 442, 452 (NCI4th)— capital sentencing— mitigating circumstances—duty of jury—jury arguments not improper**

The prosecutor's arguments in a capital sentencing proceeding that the mitigating circumstances submitted by defendant did not excuse defendant's conduct, that the jury should not find the "no significant history of prior criminal activity" and "age" mitigating circumstances, and that "the only thing standing between [defendant] and freedom" was the jury were within the wide latitude accorded counsel in the scope of argument and did not require intervention by the trial court.

**Am Jur 2d, Trial § 1760.**

16. **Criminal Law § 1355 (NCI4th)— capital sentencing—mitigating circumstance—no significant criminal history—no error in submission**

The trial court did not err by submitting, over defendant's objection, the (f)(1) mitigating circumstance that defendant had no significant history of prior criminal activity where defendant's conviction for robbery in California occurred thirteen years before the murder in question and when defendant was only twenty-two years old; defendant was convicted in 1991 for felonious assault but he had sought medical attention for the victim and was given a suspended sentence; and defendant had convictions for three forgeries but they were all related to his drug use and his culpability was limited as to each conviction. N.C.G.S. § 15A-2000(f)(1).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

17. **Criminal Law § 1362 (NCI4th)— capital sentencing—mitigating circumstance of age—no error in submission**

The trial court did not err by submitting to the jury in a capital sentencing proceeding the (f)(7) mitigating circumstance of "age," although defendant was thirty-five years old at the time of the murder, where evidence of early emotional traumas suffered by defendant and testimony by defendant's mental health expert

STATE v. BALL

[344 N.C. 290 (1996)]

that defendant had narcissistic and histrionic traits and that his attachments with others were more immature than mature provided a reasonable basis from which a rational juror could find that defendant was not as mature as his chronological age. N.C.G.S. § 15A-2000(f)(7).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**18. Criminal Law § 1373 (NCI4th)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate to the penalty imposed in similar cases where defendant was convicted under theories of premeditation and deliberation and felony murder; defendant stabbed the victim numerous times in her own bedroom; the jury found four aggravating circumstances, including the circumstance that the murder was especially heinous, atrocious, or cruel; the victim suffered great physical pain before her death; the victim was of unequal physical strength to defendant; and defendant did not seek medical aid for the victim but searched the victim's belongings for money to buy drugs and then fled the scene.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Griffin, J., at the 24 January 1994 Criminal Session of Superior Court, Beaufort County. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed by this Court 26 April 1995. Heard in the Supreme Court 11 October 1995.

*Michael F. Easley, Attorney General, by William N. Farrell, Jr., Senior Deputy Attorney General, and Thomas S. Hicks, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Marshall Dayan, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 26 October 1993 for assault with a deadly weapon with intent to kill inflicting serious bodily injury, two counts of robbery with a dangerous weapon, first-degree burglary, and for the first-degree murder of Laura Krantz. The defendant was tried capitally, and the jury found the defendant guilty of first-degree murder on the basis of premeditation and deliberation and on the basis of felony murder. Defendant was also convicted of assault with a deadly weapon with intent to kill inflicting serious injury, of two counts of attempted robbery with a dangerous weapon, and of first-degree burglary. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that the defendant be sentenced to death. For the reasons discussed herein, we conclude that the jury selection, the guilt/innocence phase of defendant's trial and defendant's capital sentencing proceeding were free from prejudicial error, and that the sentence of death is not disproportionate.

The State's evidence tended to show that the Reverend Tony Krantz lived in the parsonage beside the Beaver Dam Church with his wife, Laura, and their two children, Katrina and Jonathan. On the evening of 16 June 1993, Reverend Krantz put Katrina and Jonathan to sleep on a couch in the living room. Reverend Krantz and his wife then went to bed. Reverend Krantz was awakened by the doorbell at approximately four o'clock in the morning on 17 June 1993. Reverend Krantz was surprised but relieved to find the defendant at his door. Reverend Krantz testified that when he opened the door, he asked the defendant how he was doing, and the defendant replied, "not so well." The defendant further stated, "You told me that if I ever needed somebody to talk to that you would be there." Reverend Krantz acknowledged that he had made such a statement and let the defendant in the house.

Reverend Krantz further testified that as defendant entered the living room where the children were sleeping, the defendant stated, "I don't want to wake the kids up." Reverend Krantz moved some items from a chair, sat down and asked the defendant to sit down. However,

the defendant insisted that they go to the kitchen. Defendant and Reverend Krantz then proceeded to the kitchen. Reverend Krantz asked the defendant if he wanted something to drink, and defendant asked for a glass of ice water. Reverend Krantz poured a glass of ice water for the defendant and poured himself a Dr. Pepper. As Reverend Krantz sat down across the table from the defendant, the defendant put his hand behind his back and pulled out a knife. Reverend Krantz testified that the defendant then lunged at him and stabbed him in the eye. The force of the blow almost knocked Reverend Krantz unconscious. Reverend Krantz tried to grab defendant's arm but instead grabbed the knife with his left hand, cutting his ring finger to the bone. Reverend Krantz was screaming, "No, Terry, no, Terry, no," but the defendant continued to stab and cut Reverend Krantz. Reverend Krantz received several cuts and stab wounds, the worst wound being a stab wound to his side where the full length of the knife went into him.

About the time that Reverend Krantz was stabbed in the side, his wife, Laura, approached the kitchen. Laura Krantz took one or two steps into the kitchen, stopped and screamed. As Mrs. Krantz screamed, defendant stopped his attack on Reverend Krantz and ran after Laura Krantz. Reverend Krantz testified that he saw his wife run down the hall and that he heard a door slam and thought that his wife was safe. Reverend Krantz went to the telephone and dialed 911. After making the call to 911, Reverend Krantz ran out the back door and went to a neighbor's home.

Ten-year-old Katrina Krantz testified that she heard the doorbell ring when it was dark. Katrina stated that she saw her father walk into the living room and open the door. After her father opened the door, Katrina testified that she saw the defendant and observed the defendant and her father sit down. Katrina heard the defendant ask her father if they could go into the kitchen. After they left the room, Katrina went back to sleep. Katrina later awoke to the sound of screams from her mother. Katrina saw her mother running towards the bedroom and saw the defendant running about two steps behind her mother, holding a knife. Mrs. Krantz ran into the bedroom. Katrina heard a door being knocked open. Katrina walked into the hall and heard the defendant say, "Give me your money." Katrina testified that her mother replied, "I don't know where it is. I put it somewhere." After Katrina heard her mother make these statements, she went to the side door and ran to the church next door.

**STATE v. BALL**

[344 N.C. 290 (1996)]

Reverend Krantz was hospitalized for his wounds for four days and then confined to bed for one week. At the time of trial, Reverend Krantz still had numbness and pain all the way to the center of his chest from the knife wound to his side. Laura Krantz died as a result of more than twenty stab wounds to her head and extremities. Dr. M.G.F. Gilliland, an expert in the field of forensic pathology, performed an autopsy on the victim. Dr. Gilliland testified that, in his opinion, the fatal stab wound was one to the victim's left thigh. Dr. Gilliland stated that this wound was very deep and cut both a major artery and a major vein. Dr. Gilliland further testified that the wounds to the victim's head and neck occurred earliest in the attack, that the victim was eventually knocked down and that the fatal wound to the victim's leg was inflicted after the victim had been knocked down and could no longer defend herself. Finally, Dr. Gilliland concluded that the wounds inflicted prior to the fatal wound were painful and that the victim could have remained alive for as much as twenty minutes from the start of the assault and for as much as ten minutes after the assault concluded.

The defendant presented no evidence during the guilt/innocence phase of the trial.

At defendant's capital sentencing proceeding, the State introduced evidence of two prior convictions. The first was a North Carolina conviction for an assault with a deadly weapon with intent to kill inflicting serious injury. The second was a California conviction for armed robbery and aggravated assault.

Defense counsel presented evidence regarding the defendant's background which tended to show that the defendant had a serious alcohol and drug dependency problem. In addition, Dr. Bruce Berger testified for the defense that the defendant suffered from an antisocial personality disorder. Dr. Berger further testified that the defendant's ability to conform his behavior to the requirements of the law was impaired, and at the time of the offense, the defendant suffered from a mental or emotional disturbance.

## PRETRIAL/JURY SELECTION

[1] In his first assignment of error, the defendant contends that the trial court erred under *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968), and *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841 (1985), by informing the jury venire that the trial court was seeking jurors with no predisposition concerning the case. The

defendant argues that *Witherspoon* and *Wainwright* allow jurors to carry into the jury room all manner and variety of personal beliefs so long as those beliefs do not prevent or substantially impair any juror's ability to follow the law.

After careful review, we conclude that the trial court's statement to the jury was an accurate statement of the law. Contrary to the defendant's argument, a juror who is predisposed with regard to the law or the evidence is not competent to serve on the jury. *See State v. Leonard*, 296 N.C. 58, 63, 248 S.E.2d 853, 856 (1978). Furthermore, the defendant failed to object at any point to the trial court's instruction. Therefore, the proper standard of review is for plain error. Plain error is "a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). The defendant points out in his brief, "[p]rejudice from this error is difficult if not impossible to establish." This falls far short of a "fundamental" error. Thus, even assuming, *arguendo*, that the trial court's instruction was improper, the instruction was not so prejudicial as to amount to plain error. This assignment of error is overruled.

[2] In his next assignment of error, the defendant contends that the trial court erred by denying his motion for individual *voir dire* without affording him the opportunity to present evidence or argument in support of his motion.

Prior to jury selection, the following exchange between defense counsel and the trial court took place:

MR. HARRELL: We have filed a motion in this matter, Your Honor, for individual examination of jurors . . . .

COURT: Denied.

MR. HARRELL: . . . and so that we don't waive that we want to bring it up at this time.

COURT: Denied.

The defendant asserts that this summary denial of his motion was an abuse of discretion thereby entitling him to a new trial.

In a capital case, the trial court may direct that jurors be selected individually if the moving party shows "good cause" for the individual *voir dire*. N.C.G.S. § 15A-1214(j) (1988). No party has a right to individual *voir dire*, and the decision whether to grant individual *voir dire* rests in the sound discretion of the trial court. *State v. Short*, 322 N.C. 783, 788, 370 S.E.2d 351, 354 (1988).

Although the court's treatment of defendant's motion appears somewhat abrupt, we cannot say that the trial court abused its discretion by failing to consider the motion on its merits. The record indicates that the defendant filed his motion for individual *voir dire* several weeks before trial. In it, defendant raises as his only grounds for individual *voir dire* the conclusory allegation that "the defendant believes" individual *voir dire* is required in order to receive a fair trial. The defendant's motion does not set forth any grounds upon which the trial court could have found that there was good cause to grant his motion. Further, the trial court would not have abused its discretion even had the defendant's motion included more than the unsubstantiated allegation that individual *voir dire* was required in order to receive a fair trial. The practice of hearing oral argument on a motion is not mandated by statute. The mere refusal by the trial court to receive supportive oral argument, by itself, does not demonstrate substantive reversible error in the denials of discretionary motions. *See State v. Smith*, 305 N.C. 691, 699-700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). This assignment of error is overruled.

[3] The defendant next contends that the trial court erred by allowing the State's challenge for cause as to prospective juror Virginia Batts.

In *Witherspoon v. Illinois*, the Supreme Court held that a prospective juror may not be excused for cause simply because he "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. at 522, 20 L. Ed. 2d at 785. However, a prospective juror may be excused for cause if his views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. at 424, 83 L. Ed. 2d at 851-52. Further, prospective jurors may be properly excused if they are unable to " 'state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law.' " *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993)

(quoting *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149-50 (1986)).

When initially questioned by the trial court in the case *sub judice*, Ms. Batts stated that she was opposed to capital punishment and could not, under any circumstances, vote to impose the death penalty. When asked if she could think of any set of facts that would warrant the imposition of the death penalty, Ms. Batts answered, "I cannot vote for capital punishment." Ms. Batts further stated to the trial court that she was absolutely unable to consider the death penalty and that she was unequivocally opposed to the death penalty. During examination by defense counsel, however, Ms. Batts indicated that she could set aside her beliefs and render a verdict that would require the imposition of the death penalty. During questioning by the State, Ms. Batts stated that she could not impose the death penalty unless it was mandated. Finally, when asked by the trial court if there were any circumstances under which she could return a verdict requiring the trial court to impose the death sentence, Ms. Batts replied, "No sir." Prospective juror Batts was then excused for cause.

Notwithstanding her indications to defense counsel, prospective juror Batts was never able to state clearly, through her responses *in toto*, her willingness to temporarily set aside her own beliefs in deference to the rule of law. This Court has recognized "that a prospective juror's bias may not always be 'provable with unmistakable clarity,' " and in such instances, " 'reviewing courts must defer to the trial court's judgment concerning whether the prospective juror would be able to follow the law impartially.' " *Brogden,* 334 N.C. at 43, 430 S.E.2d at 908 (quoting *State v. Davis,* 325 N.C. 607, 624, 386 S.E.2d 418, 426 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268 (1990)). After a thorough review of the exchanges between the trial court, the prosecutor, counsel for the defendant and prospective juror Batts, we cannot say that the trial court abused its discretion in determining that the views of prospective juror Batts would prevent or substantially impair her from performing her duties as a juror. Deferring to the trial court's judgment, we find no error in excusing, for cause, prospective juror Batts. This assignment of error is overruled.

The defendant next contends that the trial court violated the defendant's constitutional rights during *voir dire* by (1) utilizing a jury selection information sheet, (2) sustaining the State's objections to several questions asked by defense counsel, and (3) failing to properly evaluate prospective jurors' responses for bias.

STATE v. BALL

[344 N.C. 290 (1996)]

**[4]** The defendant first asserts that the trial court erred by utilizing a jury selection information sheet which failed to define for the prospective jurors the concept of mitigation. The defendant's argument is without merit. Prior to selection of a jury, the trial court is required to briefly introduce the case to the prospective jurors and in so doing to identify the parties and their counsel and inform the prospective jurors of the offense of which the defendant has been charged, the victim's name, the defendant's plea, and any affirmative defense relied on by the defendant. N.C.G.S. § 15A-1213 (1988). There is no requirement that the trial court define during this brief, general introduction any of the legal terms used or to be used during the *voir dire* process. After a thorough review of the jury selection information sheet and the trial court's accompanying remarks, we conclude that the trial court met its statutory obligation.

The defendant next asserts that the trial court abused its discretion by sustaining the State's objections to three of defendant's questions to prospective jurors during *voir dire.*

**[5]** The first two objections occurred during the questioning of a prospective juror who had indicated that he had utilized the services of a therapist. Defense counsel first asked the prospective juror if he had found the treatment of the therapist helpful. The State's objection to this question was properly sustained, as the question was not relevant. At issue was the prospective juror's ability to consider the testimony of a mental health expert, and not the prospective juror's evaluation of his own experience with a mental health expert.

The defendant was then allowed to ask whether any prospective juror felt that he or she was as qualified as a psychiatrist in rendering opinions about human behavior. One prospective juror indicated that while she felt she was equally qualified to render an opinion as to some issues, she did not understand drug abuse. The following exchange then took place:

> [DEFENSE COUNSEL]: Crack cocaine abuse you wouldn't have that feeling, would you?
>
> JUROR: No, I wouldn't.
>
> [PROSECUTOR]: Objection.
>
> COURT: Well, sustained.

The prospective juror had previously told defense counsel that she did not feel as qualified as a psychiatrist to form an opinion concern-

ing drug abuse. Clearly, a prospective juror who states that he or she does not understand or know much about drug abuse in general will not be knowledgeable regarding the abuse of a specific drug. The defendant's question appeared argumentative and redundant, and therefore the State's objection was properly sustained. In any event, the defendant can show no prejudice, as the prospective juror answered the question, and the defendant received the benefit of the prospective juror's answer.

[6] The third objection occurred after defendant's counsel asked the prospective jurors: "How many of you think that drug abuse is irrelevant to punishment in this case." This Court has repeatedly held that counsel may not use *voir dire* to "stake-out" a prospective juror or determine what kind of verdict a prospective juror would render given certain facts not yet in evidence. *See State v. Davis*, 340 N.C. 1, 23, 455 S.E.2d 627, 638, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 83 (1995); *State v. Skipper*, 337 N.C. 1, 23, 446 S.E.2d 252, 264 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995). The question asked by defendant was clearly an attempt to "stake-out" the prospective jurors on how they would react to evidence of the defendant's history of drug abuse and was unlikely to provide responses relevant to a prospective juror's qualification to serve. The trial court, therefore, did not abuse its discretion by sustaining the prosecutor's objection to this question.

[7] Finally, the defendant argues in support of his allegation that his constitutional rights were violated during *voir dire* that the trial court failed to properly evaluate the responses of four prospective jurors for bias prior to denying the defendant's challenges for cause. In order to preserve the right to assign error to a denial of a challenge for cause, counsel must have exhausted his peremptory challenges, must have renewed his challenge for cause as to each prospective juror whose previous challenge for cause had been denied, and must have had his renewed motion denied. N.C.G.S. § 15A-1214(h) (1988). The defendant at no time sought to renew any of his previously denied challenges for cause. By failing to comply with the procedure made mandatory by N.C.G.S. § 15A-1214(h), the defendant has failed to preserve this issue for appellate review and is not entitled to relief. This assignment of error is overruled.

[8] In his next assignment of error, the defendant argues that the trial court erred by denying his pretrial motion to sequester the witnesses. A ruling on a motion to sequester witnesses is reviewable only upon

a showing of abuse of discretion and will only be reversed upon a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Fullwood*, 323 N.C. 371, 380, 373 S.E.2d 518, 524 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). In the case *sub judice*, the defendant makes absolutely no showing of abuse of discretion by the trial court. Absent a substantive showing by defendant that the trial court failed to make a reasoned decision, we can find no error in the denial of defendant's motion. This assignment of error is overruled.

## GUILT/INNOCENCE PHASE

**[9]** The defendant next argues that the trial court erred by denying his motion to dismiss the charge of attempted robbery with a dangerous weapon of Reverend Tony Krantz based on the insufficiency of the evidence.

When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each element of the offense charged and substantial evidence that the defendant was the perpetrator of such offense. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). If substantial evidence of each element is presented, the motion to dismiss is properly denied. *State v. Quick*, 323 N.C. 675, 682, 375 S.E.2d 156, 160 (1989). Substantial evidence is "that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981). In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *Olson*, 330 N.C. at 564, 411 S.E.2d at 595.

The two elements of attempt are (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense. *State v. Smith*, 300 N.C. 71, 79, 265 S.E.2d 164, 169-70 (1980).

Viewed in the light most favorable to the State, the evidence was clearly sufficient to establish that the defendant attempted to rob Reverend and Mrs. Krantz with a deadly weapon. The evidence showed that the defendant entered the victims' house with a concealed knife. The defendant used the knife to attack Reverend Krantz in the kitchen. It is reasonable to infer that the defendant attacked

Reverend Krantz with the knife in order to assume control over Reverend Krantz's actions and facilitate the robbery. While defendant was assaulting Reverend Krantz, Laura Krantz entered the kitchen. The defendant then chased Laura Krantz to a bedroom and attacked her with the knife. During the attack on Laura Krantz, the defendant was overheard to say, "Give me your money." From this statement, it is reasonable to infer that the defendant's intent was the robbery of money or property of value from the person or the home. Based on this evidence, we find sufficient evidence of the crime of attempted robbery with a dangerous weapon and conclude that the trial court did not err in denying defendant's motion to dismiss. This assignment of error is overruled.

[10] In a similar assignment of error, the defendant contends that the trial court erred by denying his motion to dismiss the charge of first-degree burglary.

To convict a defendant of burglary, "the State's evidence must show that there was a breaking and entering during the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein. . . . If the burglarized dwelling is occupied it is burglary in the first degree." *State v. Wilson*, 289 N.C. 531, 538, 223 S.E.2d 311, 315 (1976). The defendant argues that there was insufficient evidence of a "breaking" to support his conviction. "A breaking may be actual or constructive." *Id.* at 539, 223 S.E.2d at 316. The State's theory to support the breaking element was that there was a constructive breaking. A constructive breaking occurs when entrance to the dwelling is accomplished through fraud, deception or threatened violence. *State v. Young*, 312 N.C. 669, 681, 325 S.E.2d 181, 189 (1985).

The State's evidence disclosed that while armed with a concealed knife, defendant rang the doorbell of the victims' home at 4:00 a.m. on 17 June 1993. Reverend Krantz recognized the defendant and asked him how he was doing. Defendant replied, "not so well," and said, "You told me that if I ever needed somebody to talk to that you would be there." Reverend Krantz acknowledged that he had made such a statement and let the defendant into his home. Within minutes of entering the house, the defendant attacked Reverend Krantz and then Laura Krantz with the knife.

The evidence, when viewed in the light most favorable to the State, tends to show that Reverend Krantz was induced to open the door by defendant's representation that he was there for help. Stated

more accurately, the defendant obtained entry under the pretense that he was seeking help. In light of such evidence, we hold that there was sufficient evidence to support a charge of burglary based on a constructive breaking.

Defendant also argues that there was insufficient evidence to establish that the defendant intended to commit larceny, the specific intent element of the burglary. However, contrary to defendant's contention, the evidence showed that defendant entered the victims' home carrying a concealed weapon which he almost immediately drew and used to attack Reverend and Laura Krantz. The evidence further shows that the defendant demanded money from Laura Krantz prior to killing her, making it reasonable to infer that defendant had the requisite specific intent to commit larceny. When viewed in the light most favorable to the State, this evidence is sufficient to show that the defendant formed the intent to commit larceny prior to entering the victims' home. There being substantial evidence of each element of the crime of burglary and of the defendant being the perpetrator of the offense, we hereby overrule this assignment of error.

## CAPITAL SENTENCING PROCEEDING

[11] In his next assignment of error, the defendant contends that the trial court erred by refusing to allow the defendant's post-arrest statement to be read to the jury. The defendant specifically argues that the statement should have been admitted as a prior consistent statement or, in the alternative, under one of three exceptions to the hearsay rule. We do not agree.

There is no right to corroboration in advance of the testimony of a witness. *State v. Hinson*, 310 N.C. 245, 256, 311 S.E.2d 256, 263-64, *cert. denied*, 469 U.S. 839, 83 L. Ed. 2d 78 (1984). Defendant cannot argue that the trial court erred in refusing to admit his self-serving statement, as it was offered into evidence prior to defendant's own testimony. We also note that after the defendant testified, his counsel could have recalled to the witness stand the officer who took the post-arrest statement and offered the statement as corroborative evidence. However, no such effort was attempted. Under these circumstances, defendant has failed to show that the trial court erred by refusing to admit defendant's statement.

In any event, the record reflects that the defendant testified and in so doing, fully and directly related the substance of his post-arrest statement to the jury. Defendant's testimony, like his post-arrest state-

ment, described the facts and circumstances of the crime from his perspective. Defendant cannot show that a reasonable possibility exists that a different result would have been reached had he been allowed to introduce his statement before taking the stand. Therefore, defendant's theory of admissibility is irrelevant, as he cannot show prejudicial error by the exclusion of his post-arrest statement. Accordingly, this assignment of error is overruled.

[12] In his next assignment of error, the defendant argues that the trial court erred by allowing the State to improperly raise the issue of parole eligibility into the defendant's capital sentencing proceeding.

On direct examination, the defendant's mental health expert, Dr. Bruce Berger, testified that one of the records he reviewed in evaluating the defendant was a psychological report from the California Penal System. Dr. Berger testified that he talked to the defendant about his incarceration in California. Dr. Berger further testified that the psychological report indicated that the defendant's institutional adjustment had been satisfactory. On cross-examination, Dr. Berger testified that the psychological report appeared to be an intake evaluation and that he did not believe that the defendant had been incarcerated for very long at the time the report was prepared. The State then asked Dr. Berger, "Do you know how long he spent in prison in California?" Dr. Berger replied that he did not know but believed it to be "a number of years." Finally, Dr. Berger testified that he did not know of any other report regarding any adjustment that may have taken place after the initial evaluation.

Clearly, the State was merely pointing out on cross-examination that at the time of the preparation of the report stating that defendant's adjustment to prison had been good, the defendant had been incarcerated for only a short period of time. This question implied only that the evaluation was not based on any lengthy period of incarceration. The State made no direct reference or argument suggesting that the defendant would be eligible for parole if sentenced to life imprisonment. The subject of parole was neither mentioned nor alluded to by the State. We find no basis in which to conclude that the State improperly injected the issue of parole eligibility into the proceedings. This assignment of error is therefore overruled.

The defendant next contends that the prosecutor made several improper arguments during closing arguments of the defendant's capital sentencing proceeding.

**[13]** First, the defendant argues that the prosecutor improperly argued to the jury that it should consider the facts of defendant's prior felony conviction in California in order to find the murder of Laura Krantz especially heinous, atrocious, or cruel. The defendant did not object to this argument at trial. Therefore, the "impropriety of the argument must be gross indeed in order for this Court to hold that [the trial court] abused [its] discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

In the case *sub judice*, it is clear from the record that the prosecutor's argument regarding the especially heinous, atrocious, or cruel circumstance did not refer to the prior felony conviction in California. Rather, the prosecutor's comments concerning the violent nature of the defendant's prior felony were in reference to the aggravating circumstance that the defendant had previously been convicted of a felony involving the use or threat of violence. The argument made was proper to show proof of this aggravating circumstance. When read in context, it is clear that the prosecutor never linked these two aggravating circumstances. Therefore, the trial court did not abuse its discretion by failing to intervene *ex mero motu* to prevent this argument.

**[14]** The defendant next argues that the prosecutor improperly advised the jury that in order to find that a mitigating circumstance existed, the jury must find that it existed and that it had mitigating value. The State acknowledges that this statement is incorrect as to statutory mitigating circumstances. However, the defendant failed to object to this statement at trial, and any prejudice was subsequently cured by the trial court's correct instructions to the jury.

**[15]** Finally, the defendant contends that the prosecutor impermissibly and prejudicially: (1) argued that the mitigating circumstances submitted by defendant did not excuse the defendant's conduct, (2) argued that the jury should not find the "no significant history of prior criminal activity" and "age" mitigating circumstances, (3) argued facts outside the record, and (4) argued that "the only thing standing between [defendant] and freedom" was the jury. The defendant did not interpose objection to the first three of these arguments. After thoroughly reviewing the record, we conclude that the prosecutor's arguments fall well within the wide latitude accorded counsel in the scope of argument, are consistent with and reasonably inferable from

the record, and are therefore not so grossly improper as to require the trial court's intervention. Accordingly, this assignment of error is overruled.

In his next assignment of error, the defendant argues that the trial court erred in submitting to the jury, over defendant's objections, the N.C.G.S. § 15A-2000(f)(1) statutory mitigating circumstance that defendant had "no significant history of prior criminal activity" and the N.C.G.S. § 15A-2000(f)(7) "age" statutory mitigating circumstance. We disagree.

This Court has consistently held that the trial court has a duty to submit statutory mitigating circumstances when supported by the evidence regardless of a defendant's objection to the submission. *See State v. Lloyd*, 321 N.C. 301, 311-13, 364 S.E.2d 316, 323-24, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988). Therefore, our inquiry must focus on whether the trial court properly concluded that evidence existed from which a reasonable juror could find the existence of each circumstance.

[16] When considering whether to submit the statutory mitigating circumstance that the defendant had no significant history of prior criminal activity, "the focus should be placed on whether the criminal history is such as to influence the jury's sentencing recommendation. A very limited record might be significant in the jury's consideration, while a lengthy criminal record might be insignificant." *State v. Williams*, 343 N.C. 345, 371, 471 S.E.2d 379, 394 (1996). In other words, "it is not merely the number of prior criminal activities, but the nature and age of such acts that the trial court considers in determining whether . . . a rational juror could conclude that this mitigating circumstance exists." *State v. Artis*, 325 N.C. 278, 314, 384 S.E.2d 470, 490 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

In the case *sub judice*, the evidence indicated that the defendant had a conviction in California for robbery in 1980, a conviction in North Carolina for felonious assault in 1991, and three convictions for forgery. The defendant also had a history of drug use and abuse. However, the defendant's robbery conviction occurred thirteen years before the murder of Laura Krantz when defendant was twenty-two years old. The age of the defendant and the remoteness of the robbery conviction certainly could lessen the significance of this conviction. Although the defendant was convicted in 1991 for felonious assault,

STATE v. BALL

[344 N.C. 290 (1996)]

he was given a suspended sentence. The evidence also shows that the defendant took the victim to the emergency room after the altercation. The fact that defendant received a suspended sentence and that he sought medical assistance for the victim could lessen the significance of the felonious assault conviction. Finally, the evidence shows that defendant's forgeries were all related to his drug use. The defendant also testified that his culpability was limited as to each conviction. It is not unreasonable to assume that if his testimony was believed by one of the jurors, that juror might question the significance of defendant's criminal history. Based on this evidence, it cannot be said that the trial court erred in submitting the statutory mitigating circumstance that the defendant had no significant history of prior criminal activity.

[17] When considering whether to submit the statutory mitigating circumstance of age, chronological age is not the sole determining factor. See State v. Oliver, 309 N.C. 326, 372, 307 S.E.2d 304, 333 (1983). "Any hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances." Id. Although defendant was thirty-five years old at the time of the murder, there was evidence from which the jury could conclude that defendant was mentally immature.

For example, there was evidence that the defendant was involved in a serious car accident when he was ten which, according to defendant's parents, seemed to change defendant's personality; that defendant ran away from home when he was thirteen and that while "on the streets," he was sodomized and abused; and that the defendant developed serious drug and alcohol dependencies at an early age. Further, defendant's mental health expert, Dr. Bruce Berger, testified that the defendant seemed to have a "mixture of character traits that reflected both narcissistic, or kind of self-centered sort of traits, where it was more difficult to not have his own needs met first." Dr. Berger also testified that the defendant seemed to have "histrionic traits" and that his attachments with others were "more immature than mature." Clearly, the early emotional traumas suffered by defendant and Dr. Berger's testimony provide a reasonable basis from which a rational juror could find that the defendant was not as mature as his chronological age would seem to indicate. We therefore hold there was no error in the trial court's submission of the statutory mitigating circumstance of age. This assignment of error is overruled.

## PRESERVATION ISSUES

The defendant raises four issues which he concedes have been decided against his position by this Court: (1) the trial court erred by giving an inherently vague instruction regarding the aggravating circumstance that the murder was especially heinous, atrocious, or cruel; (2) the trial court erred by instructing the jurors that they could reject nonstatutory mitigating circumstances on the grounds that the circumstances had no mitigating value; (3) the trial court erred by instructing the jurors that they "may" rather than "must" consider mitigating circumstances found in Issues II, III and IV on the "Issues and Recommendation as to Punishment" form; and (4) the trial court erred by failing to instruct the jury that the defendant would not be eligible for parole if given a sentence of life imprisonment. We have considered the defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule each of these assignments of error.

## PROPORTIONALITY REVIEW

**[18]** Having found no error in either the guilt/innocence phase or the capital sentencing proceeding, we are required by statute to review the record and determine (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether passion, prejudice or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) whether the sentence "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (1988) (amended 1994). After thoroughly reviewing the record, transcript and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice or any other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

One purpose of proportionality review "is to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We defined the pool of cases for proportionality review in *State v.*

*Williams,* 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon,* 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 1083 (1995), and we compare the instant case to others in the pool that "are roughly similar with regard to the crime and the defendant." *State v. Lawson,* 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green,* 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994).

In the case *sub judice,* the jury found the defendant guilty of first-degree murder on the basis of premeditation and deliberation and on the basis of felony murder. At sentencing, the trial court submitted the following four aggravating circumstances, each of which the jury found: that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); that the murder was committed while the defendant was engaged in the commission of the felony of attempted robbery with a dangerous weapon, N.C.G.S. § 15A-2000(e)(5); that the murder was part of a course of conduct involving violence against another person, N.C.G.S. § 15A-2000(e)(11); and that the defendant had previously been convicted of a felony involving the use or threat of violence, N.C.G.S. § 15A-2000(e)(3). The jury declined to find the existence of any one of five statutory mitigating circumstances submitted for its consideration. Of the thirty-one nonstatutory mitigating circumstances submitted, the jury found two: that the defendant has a long history of drug use and abuse and that the defendant suffered from poly-substance abuse.

This case has several distinguishing characteristics: the jury convicted the defendant under the theory of premeditation and deliberation; the victim's brutal murder was found to be especially heinous, atrocious, or cruel; the victim was killed in her own bedroom; the victim suffered great physical pain before her death; the victim was of unequal physical strength to defendant; and finally, the jury found the existence of more than one aggravating circumstance. These characteristics distinguish this case from those in which we have held the death penalty disproportionate.

In our proportionality review, it is proper to compare the present case to those cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum,* 334 N.C. 208, 240,

STATE v. BALL

[344 N.C. 290 (1996)]

433 S.E.2d 144, 162 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 895 (1994). "Of the cases in which this Court has found the death penalty disproportionate, only two involved the 'especially heinous, atrocious, or cruel' aggravating circumstance. *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983)." *State v. Syriani,* 333 N.C. 350, 401, 428 S.E.2d 118, 146-47, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Neither *Stokes* nor *Bondurant* is similar to this case.

In *Stokes,* the defendant and a group of coconspirators robbed the victim's place of business. No evidence showed who the "ring-leader" of the group was. This Court vacated the sentence of death because the defendant was only a teenager, and it did not appear that defendant Stokes was more deserving of death than an accomplice, who was considerably older and received only a life sentence. *Stokes,* 319 N.C. at 21, 352 S.E.2d at 664. In the present case, the defendant alone was responsible for the victim's death. Defendant Stokes was only seventeen years old at the time of his crime. In this case, the defendant was thirty-five years old at the time of the crime, and the jury specifically declined to find that the defendant's age was a mitigating circumstance. In *Stokes,* the defendant was convicted under a theory of felony murder, and there was virtually no evidence of premeditation and deliberation. In the present case, the defendant was convicted upon a theory of premeditation and deliberation in addition to felony murder. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis,* 325 N.C. at 341, 384 S.E.2d at 506. Finally, in *Stokes,* the victim was killed at his place of business. In this case, the victim was killed in her bedroom. A murder in one's home "shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown,* 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

In *Bondurant,* the victim was shot while riding with the defendant in a car. *Bondurant* is distinguishable because the defendant immediately exhibited remorse and concern for the victim's life by directing the driver to go to the hospital. The defendant also went into the hospital to secure medical help for the victim, voluntarily spoke with police officers and admitted to shooting the victim. In the present case, by contrast, the defendant stabbed the victim numerous times, ensuring the victim's death. Further, the defendant did not seek medical aid for the victim. Instead, the defendant searched through

the victim's belongings for money to buy drugs and then simply fled the scene.

As noted above, one distinguishing characteristic of this case is that several aggravating circumstances were found by the jury. Of the seven cases in which this Court has found a sentence of death disproportionate, including *Stokes* and *Bondurant*, in only two, *Bondurant* and *State v. Young*, 312 N.C. 669, 325 S.E.2d 181, did the jury find the existence of multiple aggravating circumstances. *Bondurant*, as discussed above, is clearly distinguishable. In *Young*, this Court focused on the failure of the jury to find the existence of the "especially heinous, atrocious, or cruel" aggravating circumstance. The present case is distinguishable from *Young* in that one of the four aggravating circumstances found by the jury was that the murder was especially heinous, atrocious, or cruel.

For the foregoing reasons, we conclude that each case where this Court has found a sentence of death disproportionate is distinguishable from the case *sub judice*.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although this Court reviews all of the cases in the pool when engaging in our duty of proportionality review, we have repeatedly stated that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than those in which we have found the sentence of death disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

Finally, we noted in *State v. Daniels*, 337 N.C. 243, 287, 446 S.E.2d 298, 325 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995), that similarity of cases is not the last word on the subject of proportionality. Similarity "merely serves as an initial point of inquiry." *Id.*; *see also State v. Green*, 336 N.C. at 198, 443 S.E.2d at 46-47. The issue of whether the death penalty is proportionate in a particular case ultimately rests "on the experienced judgment of the members of this Court, not simply on a mere numerical comparison of aggravators, mitigators, and other circumstances." *Daniels*, 337 N.C. at 287, 446 S.E.2d at 325.

Based on the nature of this crime, and particularly the distinguishing features noted above, we cannot conclude as a matter of law that the sentence of death was excessive or disproportionate. We hold that the defendant received a fair trial and capital sentencing proceeding, free of prejudicial error.

NO ERROR.